CHARLES NAGLE, Respondent, v. JOSEPH M. RUBIN, Appellant, Impleaded with EDYTH G. JOSEPHTHAL and Others, Executors, etc., of LEWIS M. JOSEPHTHAL, and Others, Doing Business under the Name of JOSEPHTHAL & Co., Defendants, Pursuant to Civil Practice Act, Section 271.

First Department, January 30, 1931.

*Jay Leo Rothschild* of counsel [*George I. Janow*, attorney], for the appellant.

*Sol A. Rosenblatt* of counsel [*Nathan Burkan*, attorney], for the respondent.

MARTIN, J. On September 24, 1929, Al Rubin, twenty-one-year old son of the defendant, appellant, was employed as a customers' man by the plaintiff, a branch manager for a brokerage concern. It is set forth in the complaint that Al Rubin represented to the plaintiff that he had received a *bona fide* order from one Iserson to purchase 300 shares of stock of the Radio Corporation of America, then selling on the Stock Exchange at $101 per share; that Iserson was solvent and of financial responsibility and able and willing to purchase the stock and pay for it; that acting in reliance upon these representations the plaintiff's brokerage firm purchased the 300 shares of stock and incurred a liability therefor of $30,300; that Iserson refused to pay therefor; that Al Rubin had not made any investigation as to the financial responsibility of Iserson; that Iserson was not financially responsible; that Al Rubin had been negligent and careless in accepting and executing the order from Iserson, and that the plaintiff, on behalf of his firm, informed

Al Rubin that the firm would be compelled to sell the stock at a loss and hold Rubin responsible for any damage or loss suffered and would likewise discharge him from its employ for that reason.

It is also alleged that the defendant Rubin then proposed to the plaintiff that if the plaintiff's firm would waive its right to look to said Al Rubin for loss and damage by reason of the facts above stated, and if the broker would not discharge Rubin for such reason, and if the plaintiff would personally assume and take over said 300 shares of stock in plaintiff's personal account with the broker, the defendant would personally assume and take over from the plaintiff one-half of said stock, or 150 shares, which plaintiff agreed to carry for the defendant in plaintiff's personal account with the broker; and the defendant agreed to take up and liquidate said 150 shares of stock in the plaintiff's account on November 10, 1929, and to pay any " deficit " to the plaintiff on that date that might arise; that if the defendant failed to do so, the plaintiff was to have the privilege of liquidating such stock and looking to the defendant for payment or reimbursement for his damage, if any should be sustained. The defendant executed and delivered to plaintiff a writing, setting forth the substance of the aforesaid agreement, reading as follows: " For value received I hereby acknowledge ownership of 150 shares of Radio Corporation of America received into Mr. Charles Nagle's account from the account of Mr. Ed. Iserson; purchased in Mr. Iserson's account at $101 per share.

" I agree to take up or *liquidate* said stock by November 10, 1929, *and pay any deficit that may arise at that time.* After November 10 Mr. Charles Nagle has the privilege of liquidating said stock and may look to the undersigned for payment.

" (signed)    JOSEPH M. RUBIN.

" Date — Sept. 24, 1929.

" Witness: AL RUBIN   (signed) "          (Italics ours.)

By the terms of this agreement all that defendant agreed to do was to pay any *deficit* to the plaintiff, the plaintiff to have the privilege of *liquidating* such stock and of seeking *reimbursement for his damage* from the defendant.

The judgment rendered herein was for an unliquidated amount, representing what the plaintiff alleged in his complaint to be his " loss and damage " of $10,144.37, by reason of the sale of 150 shares of stock on the floor of the New York Stock Exchange for $5,215.25, which it is alleged was the price current on that day. That sum, deducted from $15,187.50, the price at which said 150 shares of stock were carried by plaintiff, plus interest and carrying

charges of $172.12, makes the $10,144.37 alleged as the plaintiff's damages.

There are several reasons why this judgment should be reversed. One or more issues of fact are involved. The defendant says the agreement which is the basis for this complaint was entered into as the result of duress and sets forth the facts which it is said constitute the duress.

In addition, rule 113 of the Rules of Civil Practice provides that such a motion may be made only when the action is to recover a debt or liquidated demand.

In *Norwich Pharmacal Co.* v. *Barrett* (205 App. Div. 749) the court said: " We think the idea of a debt is that it is founded on a contract, express or implied, to pay money in a certain sum or which can readily be reduced to a certainty as distinguished from a claim for damages arising out of a breach of contract or the violation of some duty."

That case then proceeds to show when a motion under rule 113 of the Rules of Civil Practice may be made and refers to the question of damages, showing when the amount may be considered a liquidated amount. The court said: " We think that these applications for summary judgment under that rule should not be extended beyond an action for debt or for one of those counts in *indebitatus assumpsit,* where the action is brought ' on an executed consideration for a fixed sum agreed to be paid for such execution.' "

In *Buffalo Gaiety Theatre Co., Inc.,* v. *Indemnity Ins. Co.* (218 App. Div. 669) this court said: " The amount of such loss is uncertain and unliquidated, and depends upon proof to be adduced by the plaintiff. Rule 113 of the Rules of Civil Practice, providing for the granting of summary judgments, has application only to actions to recover a debt or liquidated demand. The case at bar, therefore, does not fall within the class of actions in which summary judgment may be granted, unless it can be held that the defendant has admitted an absolute liability in that amount."

The pleadings raise issues of fact which may not be disposed of in a summary manner. To grant judgment to the plaintiff would require a decision of these questions of fact on affidavits. The defendant is entitled to a trial.

The judgment and order, therefore, should be reversed, with costs, and the motion denied, with ten dollars costs.

DOWLING, P. J., MERRELL, O'MALLEY and SHERMAN, JJ., concur.

Judgment and order reversed, with costs, and the motion denied, with ten dollars costs.